IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

FREDDIE L. SOLOMON,
    Plaintiff,

vs.                                    Case No. 5:10cv319/RS/EMT

DAVID L. TATUM, et al.,
    Defendants.
_____/

## REPORT AND RECOMMENDATION

    This cause is before the court on Plaintiff's amended civil rights complaint filed pursuant to 42 U.S.C. § 1983 (doc. 21).  Leave to proceed in forma pauperis has been granted (doc. 7).

    The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive actions.  *See* N. D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B)(C); and Fed. R. Civ. P. 72(b).  After careful consideration of all issues raised by Plaintiff, it is the opinion of the undersigned that dismissal of one Defendant is warranted.

I.    PLAINTIFF'S ALLEGATIONS

    Plaintiff is currently incarcerated at Wakulla Correctional Institution (doc. 21 at 2).[1]  His complaint asserts Eighth Amendment claims based upon alleged acts of excessive force by two law enforcement officers (*id.* at 5–9).  Plaintiff names four Defendants in this action:  David L. Tatum, Sheriff of Calhoun County; William Dalton, a deputy with the Calhoun County Sheriff's Office ("CCSO"); Harrell W. Revell, Sheriff of Liberty County; and Wade Kelly, a deputy with the Liberty County Sheriff's Office ("LCSO") (*id.* at 1, 2).

---

[1] The page references used in this Order reflect the page numbers as enumerated in the court's electronic docketing system rather than those Plaintiff may have assigned

Plaintiff alleges that on March 9, 2008, at 1:52 a.m., he was traveling at the speed limit in his vehicle, when Deputy Dalton drove behind him and initiated his lights to make a traffic stop (doc. 21 at 6).  Plaintiff states Dalton had a widespread reputation of racial profiling, racial discrimination, and using excessive force against African Americans (*id.*).  Plaintiff states he was afraid of Deputy Dalton, and there were no witnesses to observe the traffic stop, so he did not stop his vehicle (*id.*).  Plaintiff states he was attempting to drive to Liberty County, which borders Calhoun County, when his vehicle was disabled by spiked strips (*id.*).  He states he exited his vehicle, ran to a lighted parking lot, and stopped (*id.*).  Plaintiff states Deputy Dalton ordered him to the ground, and he complied by lying face down on the ground (*id.*).  He states he noticed Dalton was holding a gun (which Plaintiff later realized was a taser gun), and he begged Dalton not to shoot him (*id.*).  Plaintiff states Dalton responded with racial epithets and threats of physical harm (*id.*).  Plaintiff states Dalton then shot him with the taser in the side and back, even though he was not resisting or attempting to flee (*id.*).  Plaintiff states Deputy Kelly arrived, and Dalton stopped using the taser (*id.*).  He states the deputies handcuffed him and started punching him in his face and kicking him in his side, back, and head (*id.* at 7).  He states Dalton jumped on his lower back while he was lying face down with his hands cuffed behind his back (*id.*).  Plaintiff states both deputies used racial epithets while they were beating him (*id.*).  He states he was in great pain and bleeding from his mouth due to the punches to his face (*id.*).  He states he asked Kelly and Dalton for medical treatment for his injuries, but they refused (*id.* at 7–8).

Plaintiff states he was charged with aggravated fleeing and eluding, resisting arrest with violence, aggravated assault on a law enforcement office, reckless driving, driving while license suspended or revoked, and violation of probation (doc. 21 at 8).  He states Deputy Dalton included false statements in his affidavit of probable cause by stating Plaintiff was speeding and had no tag light (*id.*).  He contends he was stopped solely because of his race (*id.*).

Plaintiff claims Deputies Dalton and Kelly used excessive force against him in violation of the Eighth Amendment (doc. 21 at 5, 6, 8, 9).  He appears to assert two theories of liability as to Sheriffs Tatum and Revell:  (1) their respective agencies failed to adequately train deputies regarding use of excessive force, lying to supervisors, racial profiling, and making false statements

in reports and probable cause affidavits, and (2) they failed to prevent the unconstitutional conduct of their respective subordinates (doc. 21 at 8–9, 10).

Plaintiff seeks compensatory, nominal, and punitive damages (doc. 21 at 9, 12).

II.     STANDARD OF REVIEW

Because Plaintiff is proceeding in forma pauperis, the court may dismiss the case if satisfied that the action is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).  A complaint is frivolous under section 1915(e) "where it lacks an arguable basis either in law or in fact."  Neitzke v. Williams, 490 U.S. 319, 325, 109 S. Ct. 1827, 1833, 104 L. Ed. 2d 338 (1989).  Dismissals on this ground should only be ordered when the legal theories are "indisputably meritless," *id.*, 490 U.S. at 327, or when the claims rely on factual allegations that are "clearly baseless."  Denton v. Hernandez, 504 U.S. 25, 31, 112 S. Ct. 1728, 1733, 118 L. Ed. 2d 340 (1992).  Dismissals for failure to state a claim are governed by the same standard as Federal Rule of Civil Procedure 12(b)(6).  Mitchell v. Farcass, 112 F.3d 1483, 1485 (11th Cir. 1997).  The allegations of the complaint are taken as true and are construed in the light most favorable to Plaintiff.  Davis v. Monroe County Bd. Of Educ., 120 F.3d 1390, 1393 (11th Cir. 1997).  However, such acceptance should not be given blindly; only well-pleaded factual allegations are taken as true and only reasonable inferences are drawn in favor of the plaintiff.  *See* Oladeinde v. City of Birmingham, 963 F.2d 1481, 1485 (11th Cir. 1992); Marrero v. City of Hialeah, 625 F.2d 499, 502 (5th Cir. 1980);[2] *see also* Long v. Satz, 181 F.3d 1275, 1278 (11th Cir. 1999) (per curiam) ("reasonable inferences" drawn); Associated Builders, Inc. v. Ala. Power Co., 505 F.2d 97, 100 (5th Cir. 1974) ("unwarranted deductions of fact are not admitted as true").  A plaintiff must allege more than mere "labels and conclusions"; the complaint must include "[f]actual allegations . . . [sufficient] to raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1964–65, 167 L. Ed. 2d 929 (2007) (citations and internal quotations omitted).  Indeed, "any conclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as precedent all of the decisions of the former Fifth Circuit decided prior to October 1, 1981.

Case No. 5:10cv319/RS/EMT

facts do not prevent dismissal." Weissman v. Nat'l Ass'n of Sec. Dealers, 500 F.3d 1293, 1305 (11th Cir. 2007) (en banc) (Tjoflat, J., dissenting) (citing Associated Builders, Inc., 505 F.2d at 99). The complaint may be dismissed if the facts as pleaded do not state a claim to relief that is plausible on its face.  *See* Bell Atl. Corp., *supra* (retiring the often-criticized "no set of facts" language previously used to describe the motion to dismiss standard and determining that because plaintiffs had "not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed" for failure to state a claim).

III.     ANALYSIS

Plaintiff claims Sheriff Revell failed to adequately train his employees regarding the use of excessive force, lying to supervisors, racial profiling, and making false statements in reports and probable cause affidavits.  Plaintiff also claims Sheriff Revell is individually liable for Deputy Kelly's conduct because he failed to prevent it.

As to Plaintiff's first theory of liability, it is well established that a municipality or other local government may be liable under § 1983 if the governmental body itself "subjects" a person to a deprivation of rights or "causes" a person "to be subjected" to such deprivation.  *See* Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 692, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). However, under § 1983, local governments are responsible only for "their own illegal acts." Pembaur v. Cincinnati, 475 U.S. 469, 479, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986) (citing Monell, 436 U.S. at 665–683).  They are not vicariously liable under § 1983 for their employees' actions. *See* Monell, 436 U.S. at 691; Canton v. Harris, 489 U.S. 378, 392, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989); Board of Comm'rs of Bryan Cty. v. Brown, 520 U.S. 397, 403, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997) (collecting cases).

A plaintiff who seeks to impose liability on local governments under § 1983 must prove that "action pursuant to official municipal policy" caused their injury.  Monell, 436 U.S. at 691, 694. Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law.  *See ibid*.; Pembaur, *supra*, at 480–81; Adickes v. S.H. Kress & Co., 398 U.S. 144, 167–68, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970).  These are "action[s] for which the municipality is actually responsible." Pembaur, *supra*, at 479–80.

In limited circumstances, a local government official's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983. *See* Connick v. Thompson, — U.S. —, 131 S. Ct. 1350, 1359, 179 L. Ed. 2d 417 (2011). A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train. *See* Oklahoma City v. Tuttle, 471 U.S. 808, 822–23, 105 S. Ct. 2427, 85 L. Ed. 2d 791 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training'" is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in Monell "). To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." Canton, 489 U.S. at 388. Only then "can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Id.* at 389.

"'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Bryan Cty., 520 U.S. at 410. Thus, when city or county policymakers are on actual or constructive notice that a particular omission in their training program causes employees to violate citizens' constitutional rights, the county may be deemed deliberately indifferent if the policymakers choose to retain that program. *Id.* at 407. The county's "policy of inaction" in light of notice that its program will cause constitutional violations "is the functional equivalent of a decision by the city itself to violate the Constitution." Canton, 489 U.S. at 395 (O'Connor, J., concurring in part and dissenting in part). A less stringent standard of fault for a failure-to-train claim "would result in de facto respondeat superior liability on municipalities . . . ." *Id.* at 392; *see also* Pembaur, *supra*, at 483 (opinion of Brennan, J.) ("[M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by [the relevant] officials . . .").

A pattern of similar constitutional violations by untrained employees is "ordinarily necessary" to demonstrate deliberate indifference for purposes of failure to train. Bryan Cty., 520 U.S. at 409. Policymakers' "continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the

consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability." *Id.* at 407.  Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights.

In the instant case, Plaintiff was previously advised of this legal standard and provided an opportunity to amend his complaint to include sufficient facts to state a claim against Sheriff Revell (doc. 18).  In his amended complaint, he does not allege facts suggesting that the conduct of Deputy Kelly was due to a particular omission in the training program of the Liberty County Sheriff's Office.  Nor does he allege facts showing a pattern of similar constitutional violations  by other employees of the LCSO.  Therefore, he has failed to state a claim against Sheriff Revell for failure to train.

Additionally, Plaintiff has failed to state a basis for liability as to Sheriff Revell regarding his failure to prevent Deputy Kelly's conduct.  Supervisory officials are not liable under section 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability.  *See* Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003) (internal quotation marks and citations omitted).  Supervisory liability may occur, however, either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation.  *Id.* (citation omitted).  This connection may be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so, or when a supervisor's custom or policy 'result[s] in deliberate indifference to constitutional rights' or when facts support 'an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.'"  *Id.* (internal quotation marks and citations omitted); Wayne v. Jarvis, 197 F.3d 1098, 1105 (11th Cir. 1999).

Isolated incidents are generally insufficient to establish a supervisor's liability; indeed, the deprivations must be "'obvious, flagrant, rampant and of continued duration . . . .'"  Gray ex rel. Alexander v. Bostic, 458 F.3d 1295, 1308 (11th Cir. 2006) (quoting Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999)).  Knowledge imputed to the supervisor "must be so pervasive that the

refusal to prevent harm rises to the level of a custom or policy of depriving inmates of their constitutional rights." <u>Tittle v. Jefferson County Com'n</u>, 10 F.3d 1535, 1542 (11th Cir. 1994). The failure to act or implement policy must be in the face of repeated violations or other indicators signifying a strong likelihood that the situation will recur. *See* <u>Harris v. City of Marion</u>, 79 F.3d 56, 58–59 (7th Cir. 1996). Supervisors are generally entitled to rely on their subordinates to respond appropriately to situations absent clear or widespread evidence to the contrary. "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." <u>Cottone</u>, 326 F.3d at 1360 (internal quotation marks and citation omitted).

In the instant case, Plaintiff does not allege any facts suggesting a history of widespread constitutional violations by Deputy Kelly. Further, the facts do not suggest Deputy Kelly's unconstitutional conduct was the result of a custom or policy of Sheriff Revell. Additionally, Plaintiff has not alleged facts supporting an inference that Sheriff Revell directed Kelly to act unlawfully or knew that he would act unlawfully and failed to stop him from doing so. Therefore, Sheriff Revell should be dismissed as a Defendant.

Accordingly, it is respectfully **RECOMMENDED**:

1. That Plaintiff's claims against Sheriff Revell be **DISMISSED with prejudice** for failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii);

2. That this matter be referred to the undersigned for further proceedings on Plaintiff's remaining claims.

At Pensacola, Florida, this 18th day of August 2011.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**